UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**
APR 1 6 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| BOBI COVACIU, | ) | 4:25CR191-JAR/SRW |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges that, at times relevant to this Indictment:

### OVERVIEW

1. The defendant, **BOBI COVACIU** ("Defendant Covaciu"), repeatedly carried out a "confidence" scheme at Target stores across the country, including a Target store located within the Eastern District of Missouri. Specifically, Defendant Covaciu obtained tens of thousands of dollars in money and property from Target by deceiving Target's cashiers into falsely believing that he had provided them with cash in an amount equal to the full amount owed for merchandise. However, unbeknownst to the cashiers, Defendant Covaciu had used a "sleight-of-hand" trick to shortchange them, oftentimes by hundreds of dollars or more, during each fraudulent transaction. On numerous occasions, Defendant Covaciu later returned the fraudulently obtained merchandise and received a full cash refund, even though he had not paid the full purchase price for it.

### COUNT ONE
(Wire Fraud: 18 U.S.C. § 1343)

2. The above paragraphs are hereby realleged and incorporated by reference.

A. **The Scheme**

3. Beginning no later than in or around September 2023, and continuing through at least in or around September 2024, within the Eastern District of Missouri and elsewhere, Defendant Covaciu, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud Target, and to obtain money and property from Target by means of materially false and fraudulent pretenses, representations, and promises, as described below.

B. **The Manner and Means**

It was part of the scheme that:

4. Defendant Covaciu went to Target stores in various states, including within the Eastern District of Missouri, at which he conducted, and attempted to conduct, fraudulent transactions by making it appear to the cashiers at those stores that he had paid them cash for the full amount owed for merchandise. But in truth and in fact, as Defendant Covaciu well knew, he had only paid the cashiers cash for a portion of the full amount owed, frequently underpaying them by hundreds, and sometimes thousands, of dollars each transaction.

5. More specifically, after the cashiers scanned the merchandise, Defendant Covaciu counted out cash into separate piles, which he handed one at a time to the cashiers.

6. After Defendant Covaciu handed the cashiers separate piles of cash that added up to at least the full amount owed for the transaction, he took all of the cash back from the cashiers and gathered it into a single pile.

7. Before giving the pile of cash back to the cashiers, Defendant Covaciu used a "sleight-of-hand" trick, in that he held the cash close to his body with both hands, and used one of

his hands to furtively take some of the cash from the bottom of the pile, which he then placed into his pants pocket.

8.   At the same time that Defendant Covaciu pocketed a portion of the cash, he used his other hand to give the cashiers what was left of the cash, deceiving the cashiers into believing that he had handed them back the full amount of the cash.

9.   Because the cashiers had already watched Defendant Covaciu count out the cash—and in some instances had also counted it out themselves—and because the cashiers were unaware that Defendant Covaciu had secretly taken bills from the cash in his hands before he gave it back to them, the cashiers placed the cash into their cashier drawers without recounting it and permitted Defendant Covaciu to leave the stores with the merchandise, even though he had not paid the full amount owed.

10.   Each time that Defendant Covaciu successfully conducted one of these fraudulent transactions, it resulted in an interstate wire transmission from the Target store where the transaction occurred to a server located in the state of Minnesota.

11.   In furtherance of his scheme, after Defendant Covaciu conducted these fraudulent transactions, he regularly returned the fraudulently obtained merchandise and accepted a full cash refund, despite knowing that he had not paid the full amount owed for it in the first instance.

C.   **The Wire Transmissions**

12.   On or about the date set forth below, within the Eastern District of Missouri and elsewhere, the defendant,

**BOBI COVACIU**,

for the purpose of executing the above-described scheme and artifice, and with the intent to defraud, used, or caused to be used, an interstate wire communication in furtherance of, or in an attempt to carry out, some essential step in the scheme, that being an interstate wire transmission from the Target store listed below that is located within the Eastern District of Missouri to a Target server located in the state of Minnesota, as follows:

| Count | Transaction Date | Target Store Location | Wire Transmission | Total Transaction Amount | Approximate Shortchanged Amount |
|---|---|---|---|---|---|
| One | 09/22/2023 | St. Louis, MO | Interstate wire transmission from Target store in St. Louis, MO to server in the state of Minnesota occurred when cashier generated a receipt for Defendant Covaciu. | $2,865.77 | $2,300.00 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Count One, Defendant Covaciu shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, which constitutes or is derived from proceeds traceable to such violation(s).

3.  If any of the property described above, as a result of any act or omission of Defendant Covaciu:

   a.  cannot be located upon the exercise of due diligence;
   b.  has been transferred or sold to, or deposited with, a third party;
   c.  has been placed beyond the jurisdiction of the court;
   d.  has been substantially diminished in value; or
   e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney


_____
JUSTIN M. LADENDORF #68558MO
Assistant United States Attorney